NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0732n.06
Filed: August 19, 2005

No. 04-1112

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| VANESSA HENRY, )<br>)<br>Plaintiff-Appellant, )<br>)<br>v. )<br>)<br>NORTHWEST AIRLINES, INC., )<br>)<br>Defendant-Appellee. )<br>) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

Before: GIBBONS and COOK, Circuit Judges, and PHILLIPS, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Plaintiff-appellant Vanessa Henry claims that Northwest Airlines (NWA) discriminated against her based on gender and race. Henry's position as Customer Service Manager at NWA's Kalamazoo, Michigan station was eliminated as part of a reduction in force. Henry was not offered the newly-created position managing both the Kalamazoo and South Bend, Indiana stations. She was given a choice between a transfer to the Kansas City, Missouri station and a severance package. NWA moved for summary judgment, which the district court denied. NWA then moved for reconsideration, which the district court granted. The district court also vacated the denial of summary judgment and granted NWA's motion for summary

_____

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

judgment. Henry subsequently filed a motion for reconsideration, which the district court denied. The denial of Henry's motion for reconsideration is the subject of this appeal.

For the following reasons, we affirm the district court.

**I.**

Henry was hired by NWA as a Reservation Sales Agent in 1974. She was promoted to Customer Service Supervisor in 1995 and to Manager of Ground Operations or Customer Service Manager at the Kalamazoo/Battle Creek airport in 1999. As a Customer Service Manager, Henry was responsible for overseeing all station operations, including scheduling employees' hours, budgeting, and maintaining equipment, among other managerial duties. Mark Horvath became the Regional Director for NWA's Central Region on December 1, 2000, and was Henry's supervisor. Horvath was responsible for conducting the annual evaluations of the service managers in the Central Region for 2000.

During the first quarter of 2001, NWA issued a directive to reduce payroll for salaried employees by five percent. Regional directors, such as Horvath, were encouraged to eliminate positions by combining stations for management purposes. Approximately thirty-three salaried positions within the Ground Operations Division were eliminated as a result of the five percent payroll reduction. Each of the thirty-three individuals whose positions were eliminated was offered a severance package. Nine of the individuals were also offered transfer opportunities with NWA. Stations were combined based on size, number of employees, performance evaluations of managers, and proximity to other stations. At some point between April 1 and April 12, 2001, Horvath made the decision to combine the management of the Kalamazoo and South Bend stations, resulting in one

2

manager having responsibility for both stations and the elimination of the other managerial position.

The combined managerial position was assigned to Kevin Coates, the Customer Service Manager at the South Bend station. Henry's position at the Kalamazoo station was eliminated; no individual replaced Henry as the Customer Service Manager at the Kalamazoo station. Henry was offered a transfer to an Assistant Customer Service Manger position at NWA's Kansas City, Missouri station. The position would not have resulted in a reduction in wages or benefits. Henry was also offered a severance package in the event that she declined the transfer offer. NWA was aware that Henry was commuting from Chicago to Kalamazoo and that a transfer to Kansas City would make commuting extremely difficult, if not impossible. Ultimately, Henry accepted the transfer instead of the severance package.

Horvath's decision to assign the combined Kalamazoo/South Bend managerial position to Coates as opposed to Henry was based on performance reviews, cleanliness of the stations, organization methods, and communication abilities. Horvath's own observations of Henry and Coates during visits to their respective stations between January 2001 and April 2001 were also a factor in Horvath's decision. Coates and Henry received similar performance reviews, but differed significantly in the other areas of comparison.

On May 10, 2001, Henry filed a charge of discrimination with the Michigan Department of Civil Rights (MDCR) and the Equal Employment Opportunity Commission (EEOC) alleging discrimination by NWA. The MDCR dismissed Henry's charge on August 31, 2001, and the EEOC issued Henry a Notice of Right to Sue on October 19, 2001. Henry filed a complaint on January 22, 2002, alleging that NWA and Horvath discriminated against her because of her race, sex, and age

3

in violation of Title VII of the Civil Rights Act of 1964. The district court dismissed Horvath as a defendant and dismissed Henry's age discrimination claims.

The district court initially denied NWA's motion for summary judgment on July 21, 2003, after reviewing supplemental filings from both parties.**1** NWA filed a motion for reconsideration on August 4, 2003. The district court granted NWA's motions for reconsideration and summary judgment on October 24, 2003. The district court found that, though Henry did suffer an adverse employment action, she did not establish a prima facie case of discrimination and that she failed to produce admissible evidence that NWA's stated reasons for its actions were pretext for discrimination based on race and sex. Henry filed a motion for reconsideration on November 6, 2003, which the district court denied on December 12, 2003.**2** Henry filed a notice of appeal from the Memorandum and Order Dismissing Plaintiff's Motion for Reconsideration on January 12, 2004.

**II.**

The standard of review for a trial court's denial of a motion for reconsideration of a grant of summary judgment is generally *de novo*. *Ability Ctr. v. City of Sandusky*, 385 F.3d 901, 903 (6th Cir. 2004); *Hayes v. Norfolk S. Corp.*, No. 00-3876, 2001 WL 1631430, at *6 (6th Cir. Dec. 18, 2001) (citing *Columbia Gas Transmission, Corp. v. Ltd. Corp.*, 951 F.2d 110, 112 (6th Cir. 1991)). A district court's grant of summary judgment is reviewed *de novo*. *Little v. BP Exploration* & *Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Id.* Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

**1**The district court ordered NWA to submit supplemental documents addressing the timing of events in the decision-making process.

**2**In ruling on the two motions for reconsideration, the district court referred to the language of its own local rule, which requires granting a motion for reconsideration if the court and the parties have been misled by a palpable defect, the correction of which will result in a different disposition of the case. E.D. Mich. L.R. 7(1)(g)(3).

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On appeal, Henry argues that: (1) NWA did not meet the standard for granting a motion for reconsideration, (2) Henry presented direct evidence of pretext in her motion for reconsideration, which the district court did not address, (3) the district court committed error by accepting NWA's argument regarding the calculation of the performance reviews, (4) the court committed error in accepting NWA's post hoc rationalization of the elimination of Henry's position, and (5) the district court erred in not admitting evidence supporting Henry's claims.[3]

Henry devotes most of the argument section of her brief to the issue of computational errors in the performance reviews of Henry and Coates. The district court addressed Henry's argument regarding the Year at a Glance (YAG) calculations and found that she "has . . . not offered any evidence to support her interpretation of the YAG form statistics. Moreover, as stated in the Order, Horvath was not involved in creating the YAG form so any miscalculations in the form are irrelevant because he was the decisionmaker."

Henry's argument is difficult to follow, but in essence she asserts that NWA misled the district court, resulting in faulty analysis of the performance ratings. NWA correctly states in its brief:

> Throughout the briefing in the District Court, Henry was unable to identify or produce admissible evidence of any specific error in the performance reviews or other documents. Instead, she relied on the arguments of counsel. The District Court's July 21, 2004 Order denying summary judgment was the first time that alleged "computational errors" were identified, albeit a *sua sponte* finding. When presented with admissible evidence of how performance calculations were made, the District Court properly held that there is no admissible evidence of errors that benefitted Coates or [h]armed Henry.

There is no merit to Henry's argument that the district court committed error in accepting NWA's argument regarding the calculation of the performance reviews.

There is likewise no merit to Henry's remaining arguments. Henry failed to present evidence from which a *prima facie* case can be found. Even if she had established a *prima facie* case, Northwest has produced evidence of a

---

[3]In an apparent reference to the language of E.D. Mich. L.R. 7(1)(g)(3), Henry asserts several times that the district court committed "palpable" error. Our review is *de novo* and not for "palpable" error. The Michigan local rule sets out a circumstance under which judges of that court will grant motions to reconsider, assuming they choose to enforce their rule. It has no relation to our standard of review. *See Valassis Commc'ns Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996).

legitimate nondiscriminatory reason for its actions, and Henry has failed to present evidence permitting an inference of pretext or discrimination. The undisputed evidence is that Henry was transferred during a reduction in force and that the transfer decision was not motivated by discrimination. The district court properly reconsidered its earlier decision and granted summary judgment to Northwest.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

6